Judgment, Supreme Court, New York County (Emily Jane Goodman, J.), entered July 28, 2010, granting the petition seeking to annul the determination of respondent New York City Housing Authority (NYCHA), dated June 3, 2009, which terminated petitioner’s tenancy upon findings of nondesirability and breach of rules and regulations, to the extent of sua sponte remanding the matter for a new mental competence evaluation, reversed, on the law, without costs, the petition denied and the proceeding brought pursuant to CPLR article 78 dismissed. Judgment, same court (Manuel J. Mendez, J.), entered July 18, 2012, granting the petition seeking to vacate the decision of an NYCHA hearing officer, dated December 30, 2011, which denied *457 petitioner’s motion to set aside NYCHA’s determination terminating her public housing tenancy, and remanding the matter for a new hearing at which petitioner would be afforded the assistance of a guardian ad litem, reversed, on the law, without costs, the petition denied and the proceeding brought pursuant to CPLR article 78 dismissed.
As petitioner concedes, in the order entered July 28, 2010, the Supreme Court erred in sua sponte remanding the matter for a second mental competence evaluation, since no challenge to the mental health evaluation was raised in the administrative proceedings or in the subject petition (see e.g. Lombardo v Mastec N. Am., Inc., 68 AD3d 935, 936-937 [2d Dept 2009]).
The findings of nondesirability and breach of NYCHA’s rules and regulations were supported by substantial evidence that petitioner pleaded guilty to criminal sale of a controlled substance in the third degree in 2007, and that the conviction arose from petitioner’s sale of crack cocaine to an undercover officer on NYCHA’s premises (see Matter of Rodriguez v New York City Hous. Auth., 84 AD3d 630, 631 [1st Dept 2011]; Matter of Zimmerman v New York City Hous. Auth., 84 AD3d 526 [1st Dept 2011]).
The penalty of termination does not shock our sense of fairness. Even accepting petitioner’s assertions of rehabilitation, such evidence does not warrant a different determination (see Rodriguez, 84 AD3d at 631).
Upon introduction of evidence of petitioner’s purported mental illness, the Hearing Officer properly adjourned the proceedings so that petitioner could undergo a mental competency evaluation by NYCHA’s Social Services Department (see NYCHA GM-3742 Revised, 11 III [E] [3]). Upon completion of the evaluation, the Hearing Officer properly reviewed the Social Services’ report (id. at 11 III [F] [1] [a]), and noted that Social Services had determined that petitioner was competent and did not require a guardian ad litem. Accordingly, the hearing resumed and petitioner appeared pro se and without the assistance of a guardian, although she was assisted by her daughter, a lay person.
Petitioner failed to meet her burden of establishing that she was not mentally competent at the time of the hearing (see GM-3742 Revised, 11 III [F] [4]; compare Matter of Smalls v New York City Hous. Auth., 25 AD3d 478, 479 [1st Dept 2006], with Matter of Padilla v Martinez, 300 AD2d 96, 99-101 [1st Dept 2002]). Moreover, there is no support for the Supreme Court’s determination, in the order entered July 18, 2012, that the Hearing Officer was obligated to “err on the side of caution,” *458 disregard the mental competence evaluation, and appoint a guardian. Nor is there support for the court’s determination that the mental competence evaluation was insufficient, or that the evaluator should have followed-up with petitioner’s providers after the evaluation (see GM-3742 Revised; see also Blatch v Hernandez, 2008 WL 4826178, 2008 US Dist LEXIS 92984 [SD NY, Nov. 3, 2008, No. 97 Civ 3918(LTS) (HBP)] [approving NYCHA settlement, which included GM-3742 Revised]).
There is no support for our concurring colleague’s view that petitioner’s mental competence evaluation was rendered “incomplete” because it did not reflect an attempt to contact collateral sources such as petitioner’s daughter, son, sister and case manager. Under GM-3742, 11 III (C) (2) (a) and (b), mental competence is defined as a tenant’s ability to understand the nature of the proceedings and to adequately protect and assert his/her rights and interests in the tenancy. On this record, such contacts were not required by GM-3742 and it is speculative to say that they would have yielded relevant information. It also does not follow, as the concurrence asserts, that the Hearing Officer failed to critically examine the evaluation simply because she adopted its conclusions. The concurrence’s citation to GM-3742, If III (F) (1) (b) is inapt because this appeal does not involve a guardian ad litem’s pre-decision request for a mental competence evaluation or a stipulation of settlement. Also, the Hearing Officer’s decision recites evidence of respondent’s 2007 guilty plea to the drug charge as well as her 2009 guilty plea to a violation that was committed three days before the hearing commenced. As a matter of law, respondent was presumptively competent to enter those pleas (see People v Gelikkaya, 84 NY2d 456, 459 [1994]). This unrebutted presumption is itself sufficient as a rational basis for the Hearing Officer’s determination that respondent failed to establish that she was not mentally competent at the time of her hearing. Concur— Andrias, J.P., Saxe, DeGrasse and Richter, JJ.
Gische, J., concurs in a separate memorandum as follows: Like my colleagues, I would reverse each of the judgments entered in favor of the petitioner, but on narrower grounds. I agree that the Supreme Court erred when, in the order entered July 28, 2010, it sua sponte remanded the matter for a second mental competence evaluation. I also agree that the July 18, 2012 application to set aside the post-hearing determination, on the basis that petitioner was not mentally competent at the time of hearing, was correctly decided by the Hearing Officer because, under the applicable regulation, petitioner did not sustain her burden of proof.
*459 I write separately, however, because I do not agree with the majority that the mental competence evaluation performed by the Social Services Department (Social Services) was sufficient, or that the Hearing Officer complied, at the initial hearing, with all of her obligations under GM-3742, as revised after the stipulation and order of settlement as approved in Blatch v Hernandez (2008 WL 4826178, 2008 US Dist LEXIS 92984 [SD NY, Nov. 3, 2008, No. 97 Civ 3918(LTS) (HBP)] [Blatch consent decree]).
Revised GM-3742 sets forth the procedures NYCHA must follow in assessing the mental competence of public housing tenants facing termination proceedings. These procedures are also part of NYCHA’s obligation under the Blatch consent decree. Where a tenant is identified as possibly having a mental condition, the Department of Social Services is required to “perform an evaluation of the tenant’s mental competence, complete a report setting forth any relevant information and recommend whether or not a Guardian Ad Litem (GAL) should be appointed for the tenant” (NYCHA GM-3742 Revised, U III [C] [1]). GM-3742 defines a mentally competent tenant as someone who is able to “[understand the nature of the proceedings” and “[adequately protect and assert his/her rights ... in the tenancy” (id. 1Í III [C] [2] [a], [b]). If Social Services cannot determine that the tenant is mentally competent, then it “shall” recommend the appointment of a GAL (id. 1i [III] [C] [3]).
At the underlying hearing, a letter was presented from Fordham-Tremont Community Mental Health Center stating that petitioner had been admitted to its day treatment program in 2008 and been diagnosed with schizoaffective disorder and cannabis dependence. The letter refers to petitioner’s treatment through therapy and mentions that petitioner was expected to meet on a monthly basis with a staff psychiatrist for “medication review.” Petitioner’s daughter corroborated that her mother suffered from mental illness. Although the diagnosis of mental illness did not, in itself, provide a sufficient basis for the Hearing Officer to have appointed a GAL (see Matter of Smalls v New York City Hous. Auth., 25 AD3d 478 [1st Dept 2006]), Hearing Officer Miller properly stayed the termination hearing and ordered a mental assessment of petitioner at that time.
The referral to Social Services reflects that an evaluation was made because petitioner “exhibited seriously confused or disordered thinking” in the past year. The competence evaluator, whose credentials are unknown, nonetheless found the petitioner competent and able to navigate the hearing process on her own, without the need for a GAL. The report, however, *460 appears to have been based solely on an interview with petitioner herself, despite listing names and phone numbers of important collateral sources that could have provided useful information about whether petitioner’s diagnosed mental illness was interfering with her ability to understand the nature of the proceedings and adequately protect her tenancy rights. The collateral sources included petitioner’s daughter, son, sister and petitioner’s case manager at the Fordham-Tremont Community Center. There is no indication that the evaluator ever asked for petitioner’s permission to contact these sources. The failure to follow up with known collateral sources rendered the report, at best, incomplete. I share each of the Supreme Court Justices’ concern about the adequacy of this report.
When the hearing resumed on May 19, 2009, Hearing Officer Miller noted the competency determination and stated that since there had been a determination that petitioner did not need a GAL, the hearing would proceed. The Hearing Officer, however, did not make any independent review of the assessment at that time, including whether the finding of competency had been based on sufficient information or whether it comported with her own observations of petitioner during the course of the hearing. The report was not placed into evidence and petitioner was not asked to review the report or be heard on the issue before a decision was made about whether she needed a GAL. GM-3742 provides that pre-decision, an “impartial” hearing officer “shall review the GAL: Mental Competence Evaluation Request and any underlying Social Services reports” (id. H III [F] [1] [a]). By initially deferring to the mental competency evaluator’s recommendation, that petitioner was mentally competent and no GAL was needed, the Hearing Officer did not critically examine the nature or quality of the report she was provided with and, in doing so, relinquished her own important, independent role in assessing petitioner’s competency to understand the serious nature of the proceedings against her (id. 1Í III [F] [1], [2]).
After an adverse decision was made at the completion of the hearing, petitioner made a motion before the Hearing Officer to vacate the termination determination and for the appointment of a GAL. In denying petitioner’s application, Hearing Officer Miller stated that she had personally, fully complied with the procedures set forth in GM-3742 by ordering petitioner evaluated. It was then, for the first time, that the hearing officer addressed the assessment made of petitioner and compared it to her own observations of petitioner’s demeanor and affect during the hearing. Although I believe that the initial determination *461 denying a GAL was not made on a fully developed record, I still believe that the application denying vacatur was properly made by the agency.
GM-3742 provides that a hearing officer can set aside a determination even after a hearing has been held, on the grounds that the tenant was not mentally competent and not represented by a GAL at that hearing (id. 1Í III [F] [2]). With certain exceptions not present here, GM-3742 shifts the burden of proving mental incompetence to the petitioner in these post-decision applications. Petitioner included only a copy of the Fordham letter, the transcript of the hearing and her own sworn affidavit stating that she remembered “feeling very confused at [the termination hearing], and not completely understanding what was going on . . .1 felt like I couldn’t express myself fully.” She also stated that “I have suffered from mental illness for many years” but was first “properly diagnosed” after her conviction. She also stated that she suffers from severe mood swings, is forgetful and has taken medication for her schizoaffective disorder.” Petitioner explained that she typically does not “feel comfortable talking about my mental illness, especially [with] strangers” stating that it is a “very personal issue for me, and I am not comfortable disclosing it.”
While I believe the underlying competency assessment should have included some effort at contacting collateral sources with relevant information about petitioner’s competency, petitioner’s post decision application does not provide that information either. The application was primarily based upon her diagnosis of mental illness, which could not by itself support the necessary finding (see Matter of Smalls v New York City Hous. Auth., 25 AD3d at 479). It is for this reason that there is no basis to set aside the decision denying vacatur.